UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

―――――――――――――

№ 22-CV-6010 (RER) (CLP)

―――――――――――――

Leroy Jones,

Plaintiff,

versus

Mega Home & Linen, Inc. and Shaun Zakaria,

Defendants.

―――――――――――――

**MEMORANDUM & ORDER**

September 27, 2024

―――――――――――――

**RAMÓN E. REYES, JR., United States District Judge:**

Leroy Jones ("Plaintiff" or "Jones"), on behalf of himself and others similarly situated, brings this action against Mega Home & Linen, Inc. ("Corporate Defendant") and Shaun Zakaria ("Defendant" or "Zakaria") (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et. seq.*, and the New York Labor Law ("NYLL") Art. 6, §§ 190 *et seq.* and Art. 19, §§ 650 *et seq.*, along with their supporting New York State Department of Labor Regulations. (ECF No. 1 ("Compl.") ¶ 1). Defendant, proceeding *pro se*, now moves to dismiss the case.[1] (ECF No. 46). After

---

[1] Defendant states that he is moving under Rule 12(c) of the Federal Rules of Civil Procedure, but he calls his motion a "motion to dismiss" and provides legal reasoning associated with Rules 12(b)(1) and 12(b)(6). (ECF No. 46-1 ("Def.'s Mem.")). In light of Defendant's *pro se* status, the Court construes this motion as one to dismiss the complaint for lack of subject matter jurisdiction (12(b)(1)) and failure to state a claim (12(b)(6)).

carefully reviewing the record, and for the reasons set forth herein, Defendant's motion is granted in part and denied in part.

## BACKGROUND

I.     Factual Background[2]

Defendants employed Jones as a delivery and assembly worker from approximately March 2017 through August 2022. (Compl. ¶ 6). Corporate Defendant is a domestic corporation that (1) has employees engaged in commerce or in the production of goods and services for commerce and (2) has annual gross sales of $500,000 or more. (*Id.* ¶¶ 10–12). Zakaria is an owner, officer, and/or agent of Corporate Defendant, and in that capacity, he determined the wages and compensation of employees, established employees' schedules, maintained employee records, and had authority to hire and fire employees. (*Id.* ¶¶ 17–19).

Jones worked for Defendants approximately six days per week from 9 A.M. to 8 P.M., averaging sixty-six hours per week. (*Id.* ¶¶ 34–35). Regardless of the hours he worked, Defendants paid Jones a weekly flat rate of $360 from March 2017 through December 2017; $390 per week from January 2018 through December 2018; $420 per week from January 2019 through December 2019; $450 per week from January 2020 through December 2020; and $480 per week from January 2021 through August 2022. (*Id.* ¶¶ 36–42). Jones was not required to keep track of his time, and he does not believe that Defendants used any time tracking devices. (*Id.* ¶ 45). Jones simultaneously alleges that Defendants did not state the correct gross wages on any pay statement, but also that he was not provided with any wage statements as required by NYLL § 195(3). (*Id.* ¶¶ 44,

---

[2] The facts alleged are assumed true for the purposes of deciding Defendant's Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

47). Lastly, Defendants failed to provide Jones with the required notice of payrate pursuant to NYLL § 195(1). (*Id.* ¶ 48).

## II. Procedural History

Plaintiff commenced this action on October 7, 2022, alleging claims under the FLSA and NYLL for unpaid minimum, overtime, and spread-of-hours wages, failure to make timely payments, and failure to provide wage notices and statements. (Compl. ¶¶ 54–88). On February 24, 2023, Plaintiff served Corporate Defendant via the Secretary of State (ECF No. 9), but Corporate Defendant has neither appeared nor participated in this action. After issues locating Defendant, Plaintiff served him on June 17, 2023. (ECF No. 24). Shortly thereafter, Defendant, proceeding *pro se*, answered the complaint. (ECF No. 26). On November 22, 2023, Defendant sought leave to move to dismiss the complaint (ECF No. 37), which was granted (Order dated 12/07/2023). On February 29, the fully briefed motion to dismiss was filed. (ECF Nos. 46-1 ("Def.'s Mem."), 46-2 ("Pl.'s Mem."), 46-3 ("Def.'s Reply")).

## **LEGAL STANDARD**

Article III of the Constitution "limits the jurisdiction of federal courts to Cases and Controversies." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (quotations omitted). A court properly dismisses a claim under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction when it "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III" of the Constitution, *DamlerChrysler*

*Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)), and as such, lack of standing is a jurisdictional defect addressed through a Rule 12(b)(1) motion, *Lyons v. Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (citation omitted). The plaintiff has the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists. *See Makarova*, 201 F.3d at 113. When reviewing a 12(b)(1) motion, the court "must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to the plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted).

Assuming that subject matter jurisdiction exists, to survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor." *Williams v. Richardson*, 425 F. Supp. 3d 190, 200 (S.D.N.Y. 2019) (citing *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007)). "[F]act-specific question[s] cannot be resolved on the pleadings," *Todd v. Exxon Corp.*, 275 F.3d 191, 203 (2d Cir. 2001), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citation omitted).

**DISCUSSION**

Defendant seeks to dismiss Plaintiff's FLSA claims for minimum and overtime wage violations for failure to state a claim, as well as the NYLL wage notice, wage statement, and frequency of payment claims for lack of standing. (Def.'s Mem. at 4–8).[3]

I.  Plaintiff Sufficiently Pleads Enterprise Coverage under the FLSA

Defendant argues that Plaintiff insufficiently alleged an essential element of the FLSA: that he was either (1) "engaged in commerce or the production of goods for commerce" (i.e., individual coverage) or (2) "employed in an enterprise engaged in commerce or in the production of goods for commerce" whose annual gross volume of sales is more than $500,000 (i.e., enterprise coverage). (Def.'s Mem. at 4–5); *see* 29 U.S.C. §§ 206(a), 203(s)(1). In his reply memorandum, Defendant specifies that he does not dispute that the Court has jurisdiction over the FLSA claims, but instead is disputing the sufficiency of the pleadings. (Def.'s Reply at 2). Plaintiff, however, did indeed plead enterprise coverage. (Compl. ¶ 12). This allegation is sufficient.[4] *See Dejesus v. HF Management Serv., LLC*, 726 F.3d 85, 91 (2d Cir. 2013) (in the context of a motion to dismiss, a plaintiff sufficiently alleges that they are an employee within the meaning of the FLSA if they outline where they worked, their position, and provide dates of employment); *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 190–91 (E.D.N.Y. Sept. 29, 2015) (a plaintiff adequately alleges enterprise jurisdiction by pleading the requisite elements). Therefore, Defendant's motion is denied as to Plaintiff's claims under the FLSA.

---

[3] Page references throughout are to those found on CM/ECF.

[4] The Court further notes that it does indeed have jurisdiction over these claims. Whether enterprise coverage exists is "relevant to the merits of a FLSA claim" but is not a jurisdictional issue. *Wang v. Wah Lung Chinese Food 1932, Inc.*, No. 19-CV-3122 (ERK) (VMS), 2019 WL 3402278, at *1 (E.D.N.Y. July 26, 2019) (citations omitted).

II.     Plaintiff Has Standing to Pursue Pay Frequency Violations
        under NYLL § 191(1)(a), but Lacks Standing to Pursue
        <u>Wage Notice and Statement Violations under NYLL § 195(1), (3)</u>

Defendant argues that Plaintiff lacks standing for the wage notice, wage statement, and pay frequency NYLL violations alleged in Counts 6, 7, and 8 of the Complaint. (Def.'s Mem. at 7–8). To have Article III standing, a plaintiff must establish: (1) "that he suffered an injury in fact that is concrete, particularized, and actual or imminent;" (2) "that the injury was likely caused by the defendant; and" (3) "that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). Particularized injuries "affect the plaintiff in a personal and individual way," *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022) (citation omitted), and concrete injuries are "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 427.

The law of Article III standing is rooted in the idea of separation of powers. *See Raines v. Byrd*, 521 U.S. 811, 820 (1997). As such, even in the context of a statutory violation, "standing requires a concrete injury." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). "For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *TransUnion*, 594 U.S. at 426–27. Accordingly, "an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427 (emphasis in original). The Court recognized that physical and monetary harms, traditional tangible harms, and certain intangible harms, such as reputational

6

harm, qualify as concrete. *See Maddox v. Bank of New York Mellon Trust Co., N.A.*, 19 F.4th 58, 64–65 (2d Cir. 2021) (citation omitted). By contrast, in suits for damages, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." *TransUnion*, 594 U.S. at 436 (emphasis in original). Likewise, in order to establish an "informational injury," plaintiffs must identify "'downstream consequences' from failing to receive the required information." *Id.* at 442 (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)). "In sum, *TransUnion* established that in suits for damages plaintiffs cannot establish Article III standing by relying entirely on a statutory violation or risk of future harm: 'No concrete harm; no standing.'" *Maddox*, 19 F.4th 58, 64 (quoting *TransUnion*, 594 U.S. at 442).

A. <u>Frequency of Wage Payments under NYLL § 191(1)(a)</u>

The NYLL requires that all manual workers "shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." N.Y. Lab. Law § 191(1)(a)(i). A "manual worker" is a "mechanic, workingman or laborer." N.Y. Lab. Law § 190(4). Plaintiff alleges that he was paid a flat salary per week throughout his employment and seeks to recover liquidated damages due to Defendant's violation of NYLL § 191(1)(a) for failure to pay this salary at the frequency mandated by NYLL § 191(1)(a). (Compl. ¶¶ 36–41, 85–88). Defendant argues that Plaintiff lacks standing to bring this claim.[5] (Def.'s Mem. at 4–5).

---

[5] Defendant does not contest that Plaintiff was a manual worker, so for the purposes of this motion, the Court assumes, without deciding, that Plaintiff indeed was a manual worker.

7

The Court finds that Plaintiff has standing to pursue his claim under § 191(1)(a) because the delay in payment is a concrete injury in fact. *See Davis v. Banana Republic LLC*, No. 21-CV-6160 (KAM) (VMS), 2023 WL 5152449, at *4–9 (E.D.N.Y. July 31, 2023) (collecting cases)*, adopted by* 2023 WL 5969597 (Sept. 14, 2023); *Levy v. Endeavor Air Inc.*, 638 F. Supp. 3d 324, 329–30 (E.D.N.Y. 2022) (finding that the plaintiff had Article III standing to pursue a § 191 violation because "the loss of the time value of the money owed to plaintiff is not a harm that *might* occur, but one that *has* occurred" (emphasis in original)). "In so holding, this Court joins a number of other Courts within this Circuit that have considered" this question. *Confusione v. Autozoners, LLC*, No. 21-CV-0001 (JMA) (AYS), 2022 WL 17585879, at *1 (E.D.N.Y. Dec. 12, 2022) (collecting cases). The "[t]emporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing." *Caul v. Petco Animal Supplies, Inc.*, No. 20-CV-3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021) (quoting *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019)). This is a financial injury that goes beyond a mere statutory violation and is indeed contemplated by *TransUnion*. *See Gillett v. Zara USA, Inc.*, No. 20 Civ. 3734 (KFP), 2022 WL 3285275, at *6 (S.D.N.Y. Aug. 10, 2022). It is enough to allege a concrete harm resulting from a violation of Section 191, "[e]ven without any additional facts about how [the plaintiff] would have used his wages if he had received them in a timely fashion."[6] *Id.* (citations omitted); *see also Levy*,

---

[6] In at least one outlier case, a court found that "absent factual allegations that the plaintiff forewent the opportunity to invest or otherwise use the money to which he was legally entitled, he cannot plausibly claim he suffered a harm sufficiently concrete to establish Article III standing." *Rosario v. Icon Burger Acquisition*, No. 21-CV-4313 (JS) (ST), 2022 WL 198503, at *3 (E.D.N.Y. Jan. 21, 2022). However, until the Second Circuit says otherwise, the Court finds that a financial harm, no matter how small, is an injury that constitutes standing. *See Maddox*, 19 F.4th at 64; *see also Levy*, 638 F. Supp. 3d at 330 ("[T]here is no de minimis exception to . . . Article III standing." (quoting *Porsch*, 380 F. Supp. 3d at 425)).

638 F. Supp. 3d at 330. Therefore, Defendant's motion to dismiss Plaintiff's pay frequency claim for lack of standing is denied.

B. <u>Wage Notices & Statements under NYLL § 195(1), (3)</u>

Plaintiff alleges that Defendants failed to give him any wage notices or statements, or in the alternative failed to provide the correct wage statements, in violation of NYLL § 195(1), (3). (Compl. ¶¶ 44, 47–48). The NYLL requires employers to (1) provide employees with a written notice of wage rates at the time of hiring, N.Y. Lab. Law § 195(1); and (2) "furnish each employee with a statement with every payment of wages" that includes various, specified information, *id.* § 195(3).

In the wake of *TransUnion*, the majority of district courts in this Circuit have found that when an NYLL wage notice or wage statement violation is alleged without an allegation of the corresponding concrete injury in fact, the plaintiff lacks standing to pursue the claims. *See, e.g.*, *Yunganaula v. D.P. Grp. Gen. Contractors/Devs. Inc.*, No. 21-CV-2015 (CBA) (MMH), 2024 WL 924534, at *9 (E.D.N.Y. Mar. 4, 2024) (finding that the plaintiff lacked standing to bring claims for NYLL wage notice and wage statement violations because he did not allege a tangible injury) (collecting cases), *adopted by* 2024 WL 1342739 (Mar. 29, 2024); *Barbosa v. Phoenix Sutton Str. Inc.*, No. 22-CV-0666 (OEM) (ARL), 2024 WL 1835320, at *2 (E.D.N.Y. Apr. 26, 2024) (collecting cases). Indeed, the Second Circuit recently confirmed this approach in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024).

Here, consistent with the Second Circuit in *Guthrie*, the Court finds that Plaintiff did not allege a concrete injury for the wage notice and wage statement violations and thus lacks standing as to these claims. Plaintiff cites to *Bueno v. Buzinover* to support his

9

proposition that he has sufficiently plead NYLL wage statement and notice violations. (Pl.'s Mem. at 9); *Bueno v. Buzinover*, No. 22 Civ. 2216 (PAE) (KHP), 2023 WL 2387113, at *2–3 (S.D.N.Y. Mar. 7, 2023)). But *Guthrie* explicitly abrogated *Bueno*. 113 F.4th at 307–08. In *Bueno*, the court relied on the purpose of the NYLL and its supporting regulations, which is "to further protect an employee's concrete interest in being paid what he or she is owed," to exercise jurisdiction over claims alleging statutory violations but not a downstream consequence or concrete injury. 2023 WL 2387113, at *3 (quotation omitted). As *Guthrie* explained, the Supreme Court has "rejected" the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Guthrie*, 113 F.4th at 308 (quoting *TransUnion*, 594 U.S. at 426). This Court agrees. Instead, a plaintiff must satisfy the three elements of standing, including causation, that is, the injury must be "fairly traceable to the defendant's allegedly unlawful conduct." *California v. Texas*, 593 U.S. 659, 668–69 (2021). Notwithstanding that New York creates a private right to collect a cash penalty for these statutory violations, the determinative standing issue is whether the plaintiff suffered a concrete harm. *See Maddox*, 19 F.4th at 64. Here, he has not.

Plaintiff tries to distinguish the facts from those in *TransUnion* and *Maddox*, arguing that unlike in those cases, where the plaintiffs failed to allege actual or imminent harm for Fair Credit Reporting Act and New York Real Property Law violations respectively, here, Plaintiff suffered concrete harm because the failure to provide any (or accurate) wage notices and statements denied Plaintiff his statutory right to receive compensation information, which injured him because the lack of information resulted in the

10

underpayment of wages. (Pl.'s Mem. at 12–14). Again, a statutory violation in and of itself does not necessarily amount to a concrete injury. The Court is not going as far as to hold that "it is doubtful that the mere violation of [NYLL § 195(1), (3)] could ever give rise to an accompanying injury sufficient for standing purposes." *Deng v. Frequency Elects., Inc.*, 640 F. Supp. 3d 255, 267 (E.D.N.Y. 2022); *see, e.g.*, *Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19 Civ. 10104 (ER) (KNH), 2023 WL 2674743, at *2, 6 (S.D.N.Y. Mar. 29, 2023) (finding that employees did sufficiently allege a concrete injury when a development in the law changed their status from exempt to non-exempt employees, which affected their salaries, but their employer provided them with incorrect wage statements and notices that reflected their status prior to the change in the law, because the inaccurate wage notices prevented the employees from knowing about the change in status and thus that they were underpaid). *Guthrie* notes that a plaintiff could establish standing by showing they would have advocated for themselves and "avoided some actual harm or obtained some actual benefit if actual notices had been provided." 113 F.4th at 308, 308 n.4 (citing *Metcalf*, 2023 WL 2674743, at *6). But in this case, Plaintiff provides no theory as to how he was injured by these statutory violations. While Plaintiff sufficiently alleges minimum, overtime, and spread-of-hour wage violations under the NYLL (Compl. ¶ 64–77), no fact demonstrates that the denial of information *caused* the underpayment. Aptly stated:

> The injury that plaintiff suffered (*i.e.*, defendants' failure to properly pay him) is not an injury he sustained because of a lack of the required documents; it is an injury sustained because his employer violated its obligation to pay minimum wage, overtime, and spread-of-hours pay under other, express requirements of federal and state law. It is the violation of those statutes to which his injury is "fairly traceable."

11

*Quieju v. La Jugueria Inc.*, No. 23-CV-0264 (BMC), 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023); *see also Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM) (RML), 2023 WL 2206568, at *3 (E.D.N.Y. Feb. 24, 2023) (noting, in dismissing for lack of standing, that the court "cannot discern or speculate which of the 'operative facts' establish an injury"), *aff'd*, 113 F.4th 300 (2d Cir. 2024).

Therefore, Plaintiff lacks standing for wage notice and wage statement violations under NYLL § 195. Defendant's motion is granted with respect to these claims.

III.   <u>Private Right of Action Under NYLL § 191</u>

Lastly, Defendant argues that Plaintiff's § 191 claim should be dismissed because the provision of New York law mandating the frequency of payment does not create a private right of action. (Def.'s Reply at 3). "When deciding a question of state law," federal courts "look to the state's decisional law, as well as to its constitution and statutes." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020) (quotation omitted). "[W]hen there is 'an apparent split in authority among the Appellate Divisions,' a federal court is not bound by the law of the department that would apply if the case were filed in state court where the federal court sits, but rather must predict 'how the Court of Appeals would rule.'" *Zachary v. BG Retail, LLC*, No. 22 Civ. 10521 (VB), 2024 WL 554174, at *5 (S.D.N.Y. Feb. 12, 2024) (quoting *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116–17 (2d Cir. 2000)).

There is a split among the appellate divisions as to whether § 191 creates a private right of action. *Compare Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144 (1st Dep't 2019) *with Grant v. Global Aircraft Dispatch, Inc.*, 223 A.D.3d 712 (2d Dep't 2024). In *Vega*, the First Department found that late payments counted as underpayments

as contemplated by § 198(1-a), which provides for liquidated damages for underpayments, and thus an express private right of action for pay frequency violations exists. 175 A.D.3d at 1146. In the alternative, the court held that there is an implied private right of action. *Id.* at 1146–47. To determine whether there is an implied right of action, New York courts consider "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Cruz v. TD Bank, N.A.*, 2 N.E.3d 221, 225 (N.Y. 2013) (citation omitted). Applying these factors, the *Vega* court found that (1) manual workers are of the class for whose benefit the statute was enacted, (2) allowing suit promotes § 191's purpose to protect workers and § 198's purpose of deterring NYLL violations, and (3) this result is consistent with the legislative scheme. *Vega*, 175 A.D.3d at 1146–47.

By contrast, in *Grant*, the Second Department held that the statute does not create a private right of action—either express or implied—for pay frequency violations under § 191 because (1) the delayed payment does not constitute a nonpayment or under payment and (2) while the first two factors for an implied private right of action are met, the third and most important factor is not. 223 A.D.3d 712, 719–20. Specifically, since there are "two robust enforcement mechanisms" provided for within § 198, the court declined to recognize a third, implied right. *Id.* at 719 (citation omitted).

"Since *Grant*, almost all district courts in this circuit have predicted that the Court of Appeals would side with *Vega* and hold that there is either an express or implied private right of action for late payment of wages." *Bryant v. Buffalo Exchange, Ltd.*, No. 23 Civ.

8286 (AS), 2024 WL 3675948, at *3 (S.D.N.Y. Aug. 6, 2024) (collecting cases). "In matters of statutory interpretation, legislative intent is the great and controlling principle." *Id.* (quoting *Peyton v. New York City Bd. of Standards & Appeals*, 164 N.E.3d 253, 258 (N.Y. 2020)). The starting point is the language of the statute itself. *Id.*

Section 191 of the NYLL governs the frequence of payments, and § 198 governs enforcement. N.Y. Lab. Law §§ 191(1), 198. As relevant here, § 198(1-a) provides:

> On behalf of any employee paid less than the wage to which he or she is entitled . . . , the commissioner may bring any legal action necessary, . . . to collect such claim and . . . in addition to any other remedies and penalties . . . the commissioner shall assess against the employer the full amount of any such underpayment, and an additional amount as liquidated damages . . . . In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due . . . .

N.Y. Lab. Law § 198(1-a). The plain language of the statute explicitly authorizes the Commissioner of the New York Department of Labor to sue, while the language is ambiguous as to whether employees are given that authorization. *Id.* Courts, however, have read that the last part of § 198(1-a) as expressly providing for a private right of action for "wage claims," including pay frequency violations. *See Vega*, 175 A.D. at 1145–46. This interpretation is underscored by the fact that the New York State legislature recently rejected a proposed change to the NYLL that would have removed the allowance of liquidated damages when a manual worker is paid bi-weekly instead of weekly, in violation

of § 191. New York State Senate, *Adopted Budget Report* 45 (April 19, 2024), https://www.nysenate.gov/sites/default/files/open-data/fy-2025-adopted-budget-report.docx.pdf. Even more, § 198(1-a) is materially indistinguishable from § 216 of the FLSA. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) ("While the wording of the FLSA and NYLL liquidated damages provisions are not identical, there are no meaningful differences . . .."). Since 1945, the Supreme Court has interpreted § 216 of the FLSA to allow for the recovery of liquidated damages in an amount equal to the late wages, just as NYLL § 198 allows for a violation under § 191. *See Rogers v. City of Troy*, 148 F.3d 52, 55–56 (2d Cir. 1998). As such, a logical interpretation of the NYLL is that it mirrors the FLSA. *See Bryant*, 2024 WL 3675948, at *5.

Consequently, the legislative intent and co-existing Supreme Court interpretation of the nearly identical FLSA provision leads this Court to predict that the New York Court of Appeals would interpret § 198(1-a) as providing for a private right of action for pay frequency violations. In so holding, the Court joins the majority of district courts in this Circuit that have interpreted this provision. *See Espinal v. Sephora USA, Inc.*, No. 22 Civ. 3034 (PAE) (GWG), 2024 WL 4241537, at *7 (S.D.N.Y. Sept. 19, 2024); *Bryant*, 2024 WL 3675948, at *3; *Aguilar v. Calexico Cinco LLC*, No. 22-CV-6345 (DG) (SLB), 2024 WL 3837669, at *9 (E.D.N.Y. June 28, 2024), *adopted by* (Order dated 8/13/2024); *Birthwright v. Advance Stores Co., Inc.*, No. 22-CV-593 (GRB) (ST), 2024 WL 3202973, at *2 (E.D.N.Y. June 27, 2024); *Covington v. Childtime Childcare, Inc.*, No. 23-CV-710 (BKS) (MJK), 2024 WL 2923702, at *4–5 (N.D.N.Y. June 10, 2024); *Cooke v. Frank Brunckhorst Co., LLC*, No. 23-CV-6333 (JAM), 2024 WL 2263087, at *8–9 (E.D.N.Y. May 18, 2024); *Levy v. Endeavor Air Inc.*, No. 21-CV-4387 (ENV) (JRC), 2024 WL 1422322, at *2

(E.D.N.Y. Mar. 29, 2024); *Garcia v. Skechers USA Retail, LLC*, No. 23-CV-1055 (PKC) (JAM), 2024 WL 1142316, at *6–7 (E.D.N.Y. Mar. 15, 2024); *Bazinett v. Pregis LLC*, No. 23-CV-790 (MAD) (ML), 2024 WL 1116287, at *7–9 (N.D.N.Y. Mar. 14, 2024); *Gamboa v. Regeneron Pharms., Inc.*, No. 22-CV-10605 (KMK), 2024 WL 815253, at *5–6 (S.D.N.Y. Feb. 27, 2024); *Zachary*, 2024 WL 554174, at *5–9. *But see Galante v. Watermark Servs., IV, LLC*, No. 23-CV-6227 (FPG), 2024 WL 989704, at *7–11 (W.D.N.Y. Mar. 7, 2024). Therefore, Plaintiff maintains a private right action under NYLL § 191(1)(a), and Defendant's motion is denied as to this claim.[7]

IV.  Leave to Amend

Plaintiff seeks leave to amend the complaint should the Court grant Defendant's motion. (Pl.'s Mem. at 18). Rule 15 of the Federal Rules of Civil Procedure allows for a party to amend its pleading "with the opposing party's written consent or the court's leave." A "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15. "[W]here a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice." *Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 54 (2d Cir. 2016). "Such a dismissal is one for lack of subject jurisdiction," which means that "the district court lacks the power to adjudicate the merits of the case." *Id.* (citations omitted). Accordingly, the Court is deprived of the power to dismiss such a case with prejudice. *Id*. Consequently, Plaintiff's request to amend the Complaint is granted.

---

[7] The Court notes that because Plaintiff failed to plead the frequency at which he was paid, he likely did not sufficiently allege the claim under Rule 12(b)(6) pleading standards, but Defendant fails to assert this argument, and the Court declines to raise it *sua sponte*. Moreover, while Plaintiff has standing and a private right of action to pursue this claim, the Court cautions that the violation may ultimately be difficult to prove because violations of § 191 pertain to "frequency of pay and not to unpaid wages." *Gutierrez v. Bactolac Pharm., Inc.*, 210 A.D.3d 746, 747 (2d Dep't 2022); *see also Harris v. Old Navy, LLC*, No. 21 Civ. 9946 (GHW) (GWG), 2022 WL 16941712, at *5 (S.D.N.Y. Nov. 15, 2022), *adopted by* 2023 WL 2139688 (Feb. 20, 2023).

The Court cautions, however, that for NYLL wage statement and notice violations, even where standing is established at the pleading stage, courts often revisit the question after discovery and find that the plaintiff lacks standing. *See, e.g.*, *Bayne v. NAPW, Inc.*, No. 18-CV-3591 (MKB) (MMH), 2024 WL 1254197, at *6 (E.D.N.Y. Mar. 25, 2024) (in deciding a motion for summary judgment, the court found that the plaintiffs lacked standing on their NYLL § 195(3) claim because they failed to demonstrate evidence of how the violation caused a concrete injury or of "downstream consequences"); *Shi v. TL & CG Inc.*, No. 19 Civ. 8502 (SN), 2023 WL 5827598, at *3 (S.D.N.Y. Sept. 8, 2023) (finding that, after trial, the plaintiff lacked standing for the NYLL wage notice and statement claims because the consequences of failing to provide proper wage statements was entirely speculative and no injury in fact was established). The Court urges Plaintiff to consider whether amending the Complaint would be worthwhile but does not prevent Plaintiff from making such amendment. If Plaintiff chooses to amend the Complaint, it is due within fourteen days of this Memorandum & Order.

## CONCLUSION

For the reasons set forth above, the Court denies Defendant's Motion to Dismiss Claims 1, 2, and 8, but grants Defendant's Motion with respect to Claims 6 and 7 for lack of standing without prejudice. Plaintiff is granted leave to amend the Complaint, which is due within 14 days.

SO ORDERED.

_____

RAMÓN E. REYES, JR.
United States District Judge

Dated: September 27, 2024
      Brooklyn, NY